**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>RAMON A. NASH,<br><br>Defendant. | Case No. 2:26-cr-48 |

# OPINION & ORDER

Defendant Ramon A. Nash appeals his convictions for violations of 50 U.S.C. § 797 and 41 C.F.R. § 102-74.385, following a bench trial held before the Honorable Robert J. Krask, United States Magistrate Judge. ECF No. 1. For the reasons explained below, the defendant's convictions are affirmed.

## I. BACKGROUND

The defendant was a ship maintenance contractor at Naval Station Norfolk. ECF No. 7 at 2. When he arrived for work on August 26, 2025, an officer at one of the station's commercial vehicle entrances stopped the car carrying him and three of his coworkers for a standard search. *Id.* at 2–3. During that search, an officer uncovered a firearm in the car. The defendant immediately identified it as his. *Id.*

The government initially charged the defendant with two violations of 50 U.S.C. § 797 (making it a misdemeanor to violate defense property security regulations), as well as unlawfully entering a naval installation in violation of 18 U.S.C. § 1382. ECF No. 7 at 3. After the defendant filed a motion to dismiss, the government filed a superseding information, charging the defendant with three

counts: willfully violating a defense property security regulation—Commander, Navy Region Mid-Atlantic Instruction 5820.2A—in violation of 50 U.S.C. § 797 (Count I); unlawfully reentering a naval installation after having been removed therefrom, or ordered not to reenter by an officer or person in command or charge thereof in violation of 18 U.S.C. § 1382 (Count II); and, while in or on federal property, failing to comply with official signs of a prohibitory, regulatory or directory nature in violation of 41 C.F.R. § 102-74.385 (Count III). *See* ECF No. 1-1.

After a bench trial, Judge Krask found the defendant not guilty on Count II, but guilty on Counts I and III. The defendant appealed both convictions.

## II. LEGAL STANDARD

A decision of a magistrate judge is reviewed on appeal to the district court using "the same standards of review applied by a court of appeals in assessing a district court conviction." *United States v. Bursey*, 416 F.3d 301, 305 (4th Cir. 2005); *see* Fed. R. Crim. P. 58(g)(2)(D). Therefore, "[f]indings of fact . . . are reviewed for clear error, and issues of law (such as the interpretation of statutes and regulations) are reviewed de novo." *Bursey*, 416 F.3d at 306.

## III. ANALYSIS

### A. Count I

#### *i. Commander's Authority to Issue Security Regulations*

First, the defendant argues that the Commander of the Navy Region, Mid-Atlantic does not have legal authority to issue defense property security regulations whose violation can result in a conviction under 50 U.S.C. § 797. *See* ECF No. 7 at

12–17. Specifically, the defendant asserts that the ability to issue security regulations under 50 U.S.C. § 797 "has been interpreted as belonging to an installation commander or the equivalent," ECF No. 7 at 13, not "any commander at any level," *id.* at 14. The defendant derives that position from a Department of Defense instruction specifying the different kinds of commanders who can issue regulations for the protection and security of property and places under their command pursuant to 50 U.S.C. § 797. For naval stations like Naval Station Norfolk, that includes "[t]he commanding officers of all naval ships or afloat units, commanders, or commanding officers of naval shore activities or installations, bases, camps, stations, and supply activities." No. 2:25-mj-258, ECF No. 18-1 at 5.

Regional commanders—like the Commander of the Navy Region, Mid-Atlantic—are not on that list. However, the instruction states elsewhere that commanders "at all levels" can issue those regulations. *See* No. 2:25-mj-258, ECF No. 18-1 at 2. But the defendant maintains that Judge Krask erred by "concluding that any commander at any level could issue a defense property security regulation." ECF No. 7 at 14. He posits that a mere "coordinator [of] these facilities" is not someone who was "in command of all of them," and therefore lacks the authority to issue regulations made punishable under 50 U.S.C. § 797. *Id.* at 16 (quotation marks omitted).

Judge Krask disagreed with that reading, holding that "[e]ven if the instruction . . . were read to exclude all commanders not specifically listed . . . that language in an enclosure certainly would not trump the plain language of the actual

instruction defining and authorizing commanders 'at all levels to issue these instructions.'" ECF 3 at 25:5–25:10; *see also* No. 2:25-mj-258, ECF No. 18-1 at 2 ("The term 'commanders,' as used in this Instruction, refers to personnel assigned to command positions at all levels and the heads of the Defense Agencies and DoD Field Activities.").

The Court cannot go beyond the language of the instruction to exclude the Commander of the Navy Region, Mid-Atlantic from the category of individuals who can issue defense property security regulations that are relevant to this statute. As much as the defendant endeavors to characterize the Commander of the Navy Region, Mid-Atlantic as something other than a commander, *see* ECF No. 7 at 16, that argument strains credulity given his title. As a result, the Court finds that the Commander of the Navy Region, Mid-Atlantic falls within the group of "personnel assigned to command positions at all levels" who may issue defense property security regulations under 50 U.S.C. § 797. His title suggests as much, as does the broad scope of his policy portfolio. *See* ECF No. 11 at 3–4 (describing commander's authority over military installations and servicemembers).

***ii. Instruction as a Punitive Order***

Even if the Commander had legal authority to issue CNRMAINST 5820.2A, the defendant also claims that because it is "neither written pursuant to § 797, nor references penalties associated with that statute" and "is not published in the federal register," it cannot be interpreted as a military instruction that "carr[ies] with [it] the criminal penalties associated with an order or punitive regulation." ECF No. 7 at 18–

19. The government maintains that CNRMAINST 5280.2A "is a criminally enforceable regulation and does not require public posting." ECF No. 11 at 4 (alteration added).

The defendant argues that CNRMAINST 5820.2A is not a punitive regulation because it "[does] not demonstrate that it [is] intended to regulate the conduct of individual members." ECF No. 7 at 21 (citing *United States v. Stewart*, 2 M.J. 423 (A.C.M.R. 1975)). But the defendant's comparison to *Stewart* is misplaced. In *Stewart*, the regulation at issue was a document containing "instructions pertaining to the possession and use of government-owned weapons and ammunition, and to the importation, acquisition, possession, use and transfer of privately owned weapons, ammunition, and dangerous instruments." 2 M.J. at 427. Here, it is evident that CNRMAINST 5820.2A was designed to regulate the conduct of individual members. Its purpose is also to "promulgate procedures for registration, transportation, use, and storage of private firearms and weapons," but it specifically notes that it applies to "all [n]aval [i]nstallations and [f]amily [h]ousing [a]reas under the control of the Commander, Navy Region, Mid-Atlantic." *See* No. 2:25-mj-258, ECF No. 18-4 at 1. Moreover, CNRMAINST 5820.2A contains a private weapons background investigation checklist that appears to be intended to assess whether an *individual* can possess a private weapon. *Id.* at 10–11.

Additionally, courts have recognized similar firearms orders on military installations as "lawful general orders" that regulate individual conduct. *See, e.g.*, *United States v. Perkins*, 78 M.J. 550, 565 (Navy Ct. Crim. App. July 12, 2018)

(court recognized station order "requiring all persons introducing firearms onto Marine Corps Air Station Yuma to register them with the base provost marshal" as a "lawful general order"); *United States v. Cobb*, 7 M.J. 696, 699 (N.C.M.R. May 17, 1979) (base order prohibiting firearms to be stored "in wall lockers or with personal effects" was deemed "mandatory . . . [and] intended to regulate conduct of individuals").

Finally, the defendant argues that because CNRMAINST 5820.2A was not cited on the sign outside Naval Station Norfolk, and 50 U.S.C. § 797(b) requires orders to be "posted in conspicuous and appropriate places," that lends further support to his claim that CNRMAINST 5820.2A is not actually an enforceable order or regulation. ECF No. 7 at 21. But courts considering that statutory language have not necessarily deemed posting to be an independent element of the offense that must be satisfied. *See, e.g.*, *United States v. Lopez-Gonzalez*, 782 F. Supp. 3d 1062, 1072 n.3 (D.N.M. 2025).

Therefore, the Court concludes that CNRMAINST 5820.2A is a valid defense property security regulation that the Commander of the Navy Region, Mid-Atlantic had the authority to promulgate, and it is a lawful general order that can be applied to regulate the defendant's conduct. The Court affirms the defendant's conviction on Count I.

### B. Count III

At his bench trial, the defendant was also convicted of "fail[ing] to comply with official signs of a prohibitory, regulatory or directory nature" at the entrance to Naval

Station Norfolk, in violation of 41 C.F.R. § 102-74.385. ECF No. 1-1 at 2. The sign at issue here "contained a symbol of a gun with a red line through it, as well as a reference to a specific federal firearm statute, 18 U.S.C. § 930." ECF No. 7 at 23. At trial, and now on appeal, the defendant argues that the sign "did not create[] an absolute prohibition on guns" because a close reading of 18 U.S.C. § 930 indicates that "firearms are barred *in federal facilities*, and federal facilities are defined as *buildings*" under that statute. *Id.* (emphases added); *see also* 18 U.S.C. § 930(a) (prohibiting anyone from "knowingly possess[ing] or caus[ing] to be present a firearm or other dangerous weapon in a Federal facility"). Essentially, the defendant endeavors to show that "only when one brings a firearm into a federal *building* that *either* a criminal law *or* regulatory offense has been violated[,]" at least according to the statute that the sign itself cites. ECF No. 7 at 24 (emphases in original). Because he brought a firearm to the Naval Station's entrance but did not enter a building, the defendant claims that statute cannot apply to his conduct.

Judge Krask disagreed. He concluded that the sign's symbol of a gun with a slash through it was "easily and readily understood as prohibit[ing] bringing firearms on that installation." ECF No. 3 at 176:6–176:7. As a result, he concluded that the defendant had violated 41 C.F.R. § 102-74.385. *Id.* 176:21–176:23.

The Court adopts the same reasoning. First, while the defendant is correct that 18 U.S.C. § 930 only criminalizes bringing a firearm into federal facilities, a "federal facility" is fully defined as "a building *or part thereof* owned or leased by the Federal Government, *where Federal employees are regularly present for the purpose of*

*performing their official duties*." 18 U.S.C. § 930(g)(1) (emphases added). The entrance to Naval Station Norfolk certainly is a space where federal employees are regularly present for purposes of performing their official duties. Moreover, the fact that the definition of "federal facility" includes not only buildings, but "part[s] thereof," suggests that at least one credible interpretation of that language includes carrying a firearm on the land owned by the federal government on which that building sits. *Id.*

Additionally, to the extent that the defendant argues that the sign was not clear regarding 18 U.S.C. § 930's prohibition of firearms *within* federal buildings, the language of the sign itself eliminates that concern. In addition to the image of the gun with a slash through it, the sign outside the entrance warns that "POSSESSION OF FIREARMS AND DANGEROUS WEAPONS *ON* FEDERAL FACILITIES IS PROHIBITED (18 U.S.C. § 930)." ECF 7-1 (emphasis added). The defendant posits that the sign, by referencing 18 U.S.C. § 930, prohibits only possessing firearms *in* federal buildings. *See* ECF No. 7 at 24–26. But if that were truly the case—and the statute was meant only to narrowly bar possessing firearms within the buildings themselves—the defendant does not explain why the sign reads "*on* federal facilities, not "*in* federal facilities." The Court finds that choice of preposition telling and concludes that the sign provided adequate notice to the defendant that firearms were not allowed, even at the Naval Station's entrance. Therefore, the Court affirms his conviction on Count III.

## IV. CONCLUSION

Defendant Ramon A. Nash's appeal (ECF No. 1) is **DENIED**, and his convictions for Counts I and III are **AFFIRMED**.

**IT IS SO ORDERED.**

/s/

Jamar K. Walker
United States District Judge

Norfolk, Virginia
November 16, 2026